**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

CHARLES S. KUHN, *et al.*,      )
    Plaintiffs,         )
                         )
       v.           )      **Case No. 1:16-cv-440**
                         )
VISNIC HOMES, INC., *et al.*,    )
    Defendants.      )

## MEMORANDUM OPINION

At issue in this settled and dismissed, but still hard-fought breach-of-contract case is a dispute concerning the parties' compliance with their settlement agreement. Plaintiffs have moved (1) to enforce a court order that previously required compliance with the settlement terms, (2) to reform the parties' settlement agreement, (3) for an order sanctioning defendants, and alternatively, (4) for relief from the dismissal order pursuant to Rule 60(b) Fed. R. Civ. P. Because the pending motion has been fully briefed and argued orally, and because the existing, extensive record comprising approximately 90 exhibits is more than adequate to resolve the dispute, the parties agreed to submit the matter for determination on the record in lieu of presenting testimony.

## I.

Plaintiffs, Charles and Stacey Kuhn (the "Kuhns"), are residents of Loudon County, Virginia.[1] Defendants are Visnic Homes, Inc., a Maryland corporation in the business of new

---

[1] A third plaintiff is Egypt Farm, LLC, which owns the property on which the Kuhns intended to build a custom residence. The Kuhns apparently control Egypt Farm, LLC. *See* Compl. ¶ 17 (alleging that the Kuhns acquired real property in Virginia "through Plaintiff Egypt Farm LLC, with the intent to build a custom home on the property").

home construction, and its founder and CEO Ted Visnic, Jr., a Maryland resident (the "Visnics").

The pending motion is but the latest chapter in this case, which bids fair to become a modern *Jarndyce v. Jarndyce* and to make judicial resolution of this matter a Sisyphean task. Indeed, the saga began over a year ago as a breach-of-contract action regarding the Visnics' construction for the Kuhns of a custom, $5.7 million home in Sterling, Virginia. After numerous discovery disputes, the filing and withdrawing of counterclaims, defense counsel's motion to withdraw,[2] a months-long stay of proceedings, and a motion to enforce the parties' settlement agreement, the Kuhns' counsel finally submitted a joint motion for entry of an order dismissing all remaining claims. This motion was granted, the parties' agreed and proposed dismissal order was entered, and all claims were dismissed with prejudice.

Despite all this, the parties have returned yet again to litigate their compliance with their settlement agreement, which the parties executed on August 9, 2016. The contract, titled, "Confidential Settlement and Mutual Release" (the "Settlement Agreement"), contemplated that the Visnics would pay the Kuhns $525,000 in exchange for a release of liability from any and all claims, including the underlying causes of action. The first $25,000 was due in two payments of $10,000 and $15,000. *See* Settlement Agreement ¶ 2. The bulk of the Visnics' settlement obligation, $500,000, is memorialized in a Confessed Judgment Promissory Note. The Visnics agreed to make monthly payments toward the $500,000 over seven years. In fact, the Visnics

---

[2] That motion remains under consideration.

made only the initial $10,000 payment before defaulting on both the subsequent $15,000 installment and the first monthly payment.[3]

The Kuhns, to provide security for the $500,000 promissory note in the event of a default, insisted that the Visnics provide deeds of trust on two parcels of real property, one in Montana and one in Maryland. Specifically, the Settlement Agreement requires that the Visnics

> cause to be filed as security for the Confessed Judgment Promissory Note with the Courts and appropriate governmental authorities, with a copy to counsel for [the Kuhns], a Deed of Trust on the parcel of property located in Chouteau County, Montana (recorded as *Parcel Number 19-3621-06-4-03-01-0000*), and a Deed of Trust for the residence and property located at 3647 Sycamore Valley Run, Glenwood, Maryland 21738.

Settlement Agreement ¶ 2 (emphasis added). This provision is the focus of the parties' current dispute. By now, the parties have felled a small forest of trees litigating whether the Visnics complied with this provision.

To begin with, it is undisputed that the parcel number identified in the Settlement Agreement—No. 19-3621-06-4-03-01-0000—represents an unencumbered parcel, owned personally by Mr. Visnic, comprising a house and 20-acres of land in Montana.[4] It is also undisputed, however, that the Visnics did not execute a deed of trust on the 20-acre parcel with the house as required by ¶2 of the Settlement Agreement. The Visnics instead executed a deed of trust on two separate parcels, owned by Visnic Reserves, LLC, that constitute 457 acres of land adjacent to the 20-acre lot.[5] The 457-acre plot is subject to a $445,000 mortgage executed ten

---

[3] Not presented here is the question whether the Visnics ever intended to make the monthly payments.

[4] The parcel number in the Settlement Agreement is a geocode used in Montana to identify real property.

[5] Although the 457 acres in fact comprise two parcels, the parties and this Memorandum Opinion refer to the 457 acres as a single parcel of land for the sake of simplicity.

years ago, and the record indicates that the remaining principal balance on that mortgage is approximately $200,000. *See* D. Ex. 40. Importantly, the evidentiary record and the Kuhns' briefs confirm that it was the Kuhns' counsel who obtained and inserted into the Settlement Agreement the parcel number identifying the 20-acre property. Specifically, the record reflects that the Kuhns' counsel included the parcel number based on an asset search that the Kuhns' counsel performed on Mr. Visnic's Montana holdings. *See, e.g.*, *Kuhn v. Visnic Homes, Inc.*, No. 1:16-cv-440 (E.D. Va. Feb. 17, 2017) (Hr'g Tr.) at 7:24–8:1 ("[The Kuhns' Counsel]: Because we put that parcel number from the asset search … I bear some responsibility for that.").[6] Yet, the Kuhns' counsel concedes that this search did not reflect acreage, and there is no indication that the Kuhns' counsel inquired further into the size of the parcel before inserting the parcel number into the Settlement Agreement. Thus the Kuhns, after deciding to identify the Montana property by parcel number without visiting the land or confirming the size of that parcel, now argue that they believed that the 20-acre property specified in the Settlement Agreement actually comprised both the 20-acre parcel and the 457-acre parcel.[7]

Although the parties executed the Settlement Agreement on August 9, 2016, this did not end the matter. On October 6, 2016, the Kuhns filed a motion to enforce ¶ 2 of the Settlement

---

[6] A company bearing Mr. Visnics' name, Visnic Reserve, LLC, owned the 457-acre parcel. Thus, a thorough land-records search for the "Visnic" name undoubtedly would have revealed the legal descriptions and salient documents relating to both parcels—that is, the 20-acre parcel with the house and the 457-acre parcel.

[7] As explained below, this argument is belied by a November 30, 2016 email that the Kuhns' counsel sent to Mr. Visnic. *See* D. Ex. 28 at 2. It is also worth noting here that the Kuhns incorrectly contend in their supplemental brief that the parties "continual[ly] reference[d] … a singular Montana property consisting of 477 acres[.]" P. Supp. Br. (Doc. 142) at 2 (quotation marks omitted). Contrary to this contention, the record does not disclose that the Visnics ever referenced "477 acres" during settlement negotiations. In fact, the Kuhns, to support the claim that the parties had "continual[ly] reference[d]" 477 acres, rely primarily on self-serving emails that Mr. Kuhn and his attorneys authored *after* they had filed the instant motion.

Agreement, contending that the Visnics had failed to execute the deeds of trust within the contractually-required timeframe. Thereafter, on October 21, 2016, following full briefing and oral argument, an Order issued, directing the Visnics to

> execute the appropriate documents to file and record the requisite Deeds of Trust on the Montana and Maryland properties to secure the Confessed Judgment Promissory Note … and provide copies to Plaintiffs, as set forth in ¶ 2 of the Settlement Agreement … .

*Kuhn*, No. 1:16-cv-440 (E.D. Va. Oct, 21, 2016) (the "October 21 Order"). The October 21 Order further required the parties to return on October 28, 2016 for a hearing to ascertain whether the Visnics had complied with the Settlement Agreement and whether dismissal would be appropriate. *Id.*

On October 26, the Visnics provided the Settlement Agreement to their local counsel in Montana for local counsel to prepare and execute the appropriate deed of trust. Yet, the Visnics' Montana counsel prepared and executed a deed of trust on the 457-acre parcel—not the 20-acre parcel with a house identified in the Settlement Agreement—which deed the Visnics provided to the Kuhns. This mistake was in plain view; significantly, the Montana deed of trust provided to the Kuhns contained a legal property description (not a parcel number) of the 457-acre parcel, which matches the legal description in the pre-existing mortgage on that same parcel. Moreover, Mr. Visnic had listed those 457-acres for a sale price of $776,900, and provided the Kuhns a copy of the listing, which included the same, correct legal description of the 457-acres. And although the 457-acre parcel was subject to a bank mortgage and was not identified in the Settlement Agreement, the Kuhns accepted the deed of trust on the 457 acres without comment or objection at the time.

On October 27, the parties requested a one-week continuance of the October 28 hearing, which had been set for the purpose of determining whether the Visnics had complied with the

Settlement Agreement. Thus, the hearing was rescheduled for November 4, 2016. Thereafter, on November 3, 2016—on the eve of the compliance hearing—the Kuhns' counsel filed a joint motion for entry of a consent order of dismissal. In this respect, counsel for the Kuhns indicated that the scheduled compliance hearing was unnecessary and submitted a joint, proposed consent order of dismissal. Thus, on November 3 the consent order was entered, dismissing all claims with prejudice. *See Kuhn*, No. 1:16-cv-440 (E.D. Va. Nov. 3, 2016) (Order).

Within a week of the dismissal order, the Visnics defaulted on their payment obligations under the Settlement Agreement, and on November 8, 2016, the Kuhns provided the Visnics with a notice of default.[8] The Kuhns also threatened to foreclose on the 457-acre parcel not specified in the Settlement Agreement. In response, the Visnics did not object and indeed agreed to sign a quitclaim deed in favor of the Kuhns on the 457-acre property. On November 22, 2016, Mr. Visnic signed and delivered to the Kuhns the quitclaim deed on the 457-acre parcel. Accordingly, the Kuhns are now the record owners of 457-acres of Montana property never identified in the Settlement Agreement.

Oddly, the Kuhns, despite having received a copy of the deed of trust before they threatened to foreclose on it, contend that November 22, 2016—the day Mr. Visnic signed the quitclaim deed—was the first time they had notice that the Visnics had failed to execute a deed of trust on the 20-acre parcel listed in the Settlement Agreement. But this contention is belied by the Kuhns' counsel's emails. Specifically, on November 20, 2016, the Kuhns' counsel emailed Mr. Visnic, forwarding him a draft quitclaim deed for the 457-acre property. *See* D. Ex. 27. In that email, the Kuhns' counsel also requested tax information on Visnic Reserve, LLC, which the

---

[8] Paragraph 1 of the Settlement Agreement required the Visnics to pay $15,000 by November 7, 2016, along with a monthly payment of $7,304.28. *See* Settlement Agreement ¶ 1. The Visnics paid neither.

Kuhns' counsel, based on their record search, knew or should have known was the owner of the 457-acre parcel, but not the owner of the 20-acre parcel. *Id.* Thus, contrary to the Kuhns' position, the record reflects that the Kuhns, well before November 22, at least had inquiry notice that they were poised to receive a quitclaim deed for a parcel of land not specified in the Settlement Agreement. Nevertheless, the Kuhns accepted both the deed of trust and the quitclaim deed on the 457-acre parcel.

Thereafter, on November 28, 2016, the Kuhns filed a Confession of Judgment in Loudoun County, Virginia. The Kuhns contend in the Confession of Judgment action that the Visnics have defaulted on their payment obligations, and that the Kuhns are entitled to $723,055.56—far more than the $500,000 identified in the promissory note. In this respect, the Kuhns apparently seek attorneys' fees and the amount of some mechanics' liens placed on the Kuhns' residence. *See, e.g.*, D. Ex. 40. In response, the Visnics hired new counsel to file a motion to set aside and dismiss the Confession of Judgment action, or to direct the filing of a bill of particulars. Specifically, the Visnics argue that they should be credited for the value of the 457-acre parcel they conveyed to the Kuhns, and that the confessed judgment should not include the claimed attorneys' fees and mechanics' liens, on the ground that those fees and liens are not identified in the promissory note. *See id.* That action remains pending.

Two days later, on November 30, 2016, counsel for the Kuhns apparently conceded that they were contractually entitled only to the 20 acres identified in the Settlement Agreement. *See* D. Ex. 28 at 2 (November 30, 2016 Email). Specifically, the Kuhns' counsel wrote to Mr. Visnic:

> As you know, you provided [the Kuhns] with the *wrong* Deed of Trust, which secured the 477 acres [sic][9] NOT included in the Settlement Agreement, and which carries a significant Mortgage. We have now confirmed that the Parcel

---

[9] It is undisputed that the deed of trust identifies 457 acres, not 477 acres.

listed in the Settlement Agreement for the Montana property is actually the 20 acres and the house, unencumbered.

*Id.* (first emphasis added).

Yet, the Kuhns, having already accepted the "wrong" deed of trust and a quitclaim deed on the 457-acre parcel "NOT included in the Settlement Agreement," listed that property for sale for $650,000. *Id.* (emphasis in original). The Kuhns subsequently received an offer to purchase the 457 acres for $430,000, to which the Kuhns recently countered with an offer to sell for $548,000. Thus, assuming that the principal balance on the mortgage totals $200,000, the Kuhns' sale of the 457-acres would satisfy a substantial portion of the Visnics' debt.

Subsequently, on January 27, 2017, the Kuhns filed the instant motion on the ground that the Visnics failed to execute a deed of trust on the 20-acre property identified in the Settlement Agreement. Meanwhile, the Visnics have offered to exchange, and are still willing to exchange, the 20-acre parcel listed in the Settlement Agreement for the 457 acres that the Kuhns now own and seek to sell, a proposal that would give full force and effect to the terms in the Settlement Agreement. Yet, despite the Settlement Agreement's terms, and their counsel's November 30 email stating that the Visnics executed the "wrong Deed of Trust," the Kuhns now maintain that they are entitled to all 477 acres—the 20-acre parcel with the house and the 457-acres never identified in the Settlement Agreement.

On February 17, 2017, the parties presented oral argument on the Kuhns' motion, and a second hearing was scheduled for May 4, 2017 to provide the parties an opportunity to present testimony regarding their settlement negotiations. On May 4, however, the parties appeared and agreed that the matter could appropriately be resolved on the robust documentary record without the necessity of calling counsel as fact witnesses.

## II.

At issue now on the Kuhns' motion are their requests for (1) equitable reformation of the Settlement Agreement to provide that the Kuhns are entitled to both the 457-acre parcel never identified in the Settlement Agreement and the 20-acre parcel, (2) an order requiring defendants to comply with the October 21, 2016 Order that mandated compliance with the Settlement Agreement, and (3) sanctions against the Visnics. Alternatively, the Kuhns seek relief pursuant to Rule 60(b), namely, an order vacating the dismissal of this action and reviving the underlying lawsuit. *See* Rule 60(b), Fed. R. Civ. P.

The Kuhns' motion requires analysis of five issues: (1) whether subject matter jurisdiction exists; (2) whether equity supports reformation of the Settlement Agreement; (3) whether the Kuhns are entitled to an Order requiring the Visnics to execute a deed of trust on the 20-acre parcel; (4) whether a Rule 60 Order is appropriate; and (5) whether sanctions should be imposed. Each subject is separately addressed.

## A. Jurisdiction

Analysis begins, as it must, with subject matter jurisdiction. The Kuhns claim that ancillary jurisdiction exists over their motion because the Kuhns seek to enforce the October 21 Order, which instructed the Visnics to execute deeds of trust on the parcel number identified in ¶ 2 of the Settlement Agreement. For the reasons that follow, there is subject matter jurisdiction to adjudicate this dispute.

The Supreme Court in *Kokkonen v. Guardian Life Insurance Co. of America* has set forth a straightforward framework for analyzing a district court's ancillary jurisdiction. *See* 511 U.S. 375 (1994). There, the Supreme Court noted that "ancillary jurisdiction" comprises two separate "heads," or categories: (1) jurisdiction over "factually interdependent" claims and (2) jurisdiction

allowing a court to "function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]" *Id.* at 380-81. The first category of ancillary jurisdiction—power over factually *inter*dependent claims—does not apply here, as the Visnics' alleged flouting of the Settlement Agreement does not turn on whether the Visnics also breached a construction contract, the subject of the original action. Yet, ancillary jurisdiction does exist pursuant to the second category because the Kuhns seek to enforce a prior judicial order. *See id.* at 381.

In opposition to this conclusion, the Visnics contend that *Kokkonen* generally precludes enforcement of a settlement agreement after the underlying case has been dismissed with prejudice. In this respect, the Visnics point to *dictum* in *Kokkonen*, where the Supreme Court stated that enforcement of a settlement agreement would have been proper if, among other things, "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the [dismissal] order." *Id.* The Visnics' reliance on this *dictum* is misplaced.

Indeed, *Kokkonen* is inapposite, as there the Supreme Court found that no ancillary jurisdiction existed because the parties in the underlying lawsuit had reached a settlement and submitted a voluntary stipulation of dismissal pursuant to Rule 41(a), Fed. R. Civ. P.,[10] which the district court endorsed with a "so ordered" notation. *Id.* at 377. Importantly, in *Kokkonen*, unlike here, none of the district court's orders required compliance with, or otherwise incorporated, the settlement agreement there in issue. Thus, the *Kokkonen* majority understandably concluded that

---

[10] *Kokkonen* dealt with a previous version of Rule 41 that is essentially similar to the current iteration of the Rule. Today, Rule 41(a) provides that "the plaintiff may dismiss an action without a court order by filing: … a stipulation of dismissal signed by all parties who have appeared." Rule 41(a)(1)(A)(ii), Fed. R. Civ. P.

a mere "so ordered" notation on a voluntary stipulation of dismissal, without more, was insufficient to confer ancillary jurisdiction over a belated motion to enforce a settlement agreement. Here, by contrast, the October 21, 2016 Order expressly required the Visnics to comply with a specific provision of the Settlement Agreement, and the Kuhns now argue that the Visnics failed to comply with that order. In this regard, jurisdiction exists to ensure that a party has complied with a judicial order. As the Fourth Circuit has stated,

> A court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur, and the continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement.

*Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002).[11] Precisely this principle furnishes a sound basis for ancillary jurisdiction here.[12]

## B. Reformation

Although the Kuhns seek enforcement of the October 21 Order, their primary argument is that the Settlement Agreement should be equitably reformed. Specifically, the Kuhns argue that they made a mistake of fact; that is, the Kuhns apparently believed that the parcel number their counsel inserted into the Settlement Agreement included not just a house and 20-acres, but also an additional, unidentified 457 acres. For the reasons that follow, it would be inappropriate and inequitable to reform the parties' contract in this respect.

---

[11] *See also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (noting that ancillary jurisdiction may apply to a settlement agreement if the contract "is embodied in a consent decree *or some other judicial order*" (emphases added)).

[12] Even assuming, *arguendo*, ancillary jurisdiction did not exist, there would still be an independent ground for jurisdiction pursuant to Rule 60(b), Fed. R. Civ. P. *See Kokkonen*, 511 U.S. at 381 (noting that an "independent basis for federal jurisdiction" permits federal courts to enforce a settlement agreement). Specifically, Rule 60(b) provides that a court has power "to relieve a party … from a final judgment[.]" Rule 60(b), Fed. R. Civ. P. Thus, jurisdiction exists here.

To begin with, both parties correctly agree that Virginia substantive law applies to the issue of reformation, as the **Settlement Agreement** has a choice-of-law provision designating Virginia as the source of governing law. *See* Settlement Agreement ¶ 19.[13] And Virginia law sets a high bar for parties who, like the Kuhns, seek to reform a contract based on a mistake of fact. Indeed, "[t]he equitable remedy of reformation … provides relief against a mistake of fact in a written instrument in only two instances," namely, (1) "where the mistake is mutual" or (2) "where … the mistake is unilateral, but it is accompanied by misrepresentation and fraud perpetrated by the other [party]." *Ward v. Ward*, 387 S.E.2d 460, 462 (Va. 1990) (quotation marks and alterations omitted). The party seeking reformation must show a mutual mistake or fraud by clear and convincing evidence. *See Knewstep v. Jackson*, 523 S.E.2d 505, 508 (Va. 2000) (requiring clear and convincing evidence to support reformation because of a mutual mistake of fact); *Ayers v. Mosby*, 504 S.E.2d 845, 848 (Va. 1998) (same); *Ward*, 387 S.E.2d at 463 (requiring clear and convincing evidence to support reformation of an instrument because of a unilateral mistake accompanied by fraud). Here, the Kuhns have failed to show either.

### i) Mutual Mistake

The record reflects that there is no mutual mistake of fact in this case. To show a mutual mistake warranting reformation, the Kuhns must prove that "both parties [entered into the Settlement Agreement] mistakenly believing it reflects their antecedent bargain." *Ward*, 387 S.E.2d at 462. The inquiry is "whether each party held the *same* mistaken belief with respect to a

---

[13] This result follows from the well-settled rule that a federal court sitting in diversity applies the conflict of law rules of the state in which the court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623-24 (4th Cir. 1999). And Virginia's choice of law rules dictate that where, as here, "a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 81 (2007); *see also Hitachi*, 166 F.3d at 624.

material fact *at the time* the agreement was executed." *Collins v. Dep't of Alcoholic Beverage Control*, 467 S.E.2d 279, 283 (Va. Ct. App. 1996) (emphases added), *aff'd on reh'g en banc*, 472 S.E.2d 287 (Va. Ct. App. 1996). And importantly, the party seeking to reform the instrument must show a mutual mistake by clear and convincing evidence. *See, e.g.*, *Knewstep*, 523 S.E.2d at 508; *Ayers*, 504 S.E.2d at 848. Given this, the Kuhns must show by clear and convincing evidence that both parties, at the time they signed the Settlement Agreement, mistakenly believed when they executed the contract that the parcel number in the Settlement Agreement reflected both the 20-acre parcel with a house *and* the 457-acre parcel. But the record reflects that the Kuhns have fallen far short of proving by clear and convincing evidence that the Visnics shared the Kuhns' mistake of fact. Put differently, contrary to the Kuhns' claim, the record does not show that the Visnics intended to provide deeds of trust on *both* the 20-acre plot with a house *and* the adjacent 457 acres in Montana. Thus, the parties were not under the same mistake of fact sufficient to warrant reformation. *See Ward*, 387 S.E.2d at 462; *Collins*, 467 S.E.2d at 283.

Seeking to avoid this result, the Kuhns point to several pieces of evidence that, in their view, demonstrate the Visnics' mutual mistake. The Kuhns specifically point to (1) some emails, primarily drafted by the Kuhns' counsel, and ambiguous statements in which the parties referred to a "Montana property" or "large acreage," (2) the Visnics' inconsistent positions in legal briefs, and (3) the Settlement Agreement's vague terms identifying one or two potential pre-existing liens that may have been on the Visnics' Montana and Maryland properties, which terms the Kuhns interpret as evincing the Visnics' intent to convey both the encumbered 457-acre lot *and* the unencumbered 20-acre lot in Montana. None of these arguments is persuasive.

First, the emails about a singular "property" or "large acreage" shed no light on whether both parties believed that the Settlement Agreement's reference to a single parcel number

reflected a 20-acre parcel, the 457-acre parcel, or both. Both parcels, in some sense, are "large," and reference to a single "property" could just as easily be interpreted as referring to one parcel or another, and not to both. Thus, the Kuhns' reliance on these words is hardly clear and convincing evidence of a mutual mistake.

Nor are the identified inconsistencies in the Visnics' briefs persuasive evidence of a mutual mistake. To be sure, the Visnics have been inconsistent. On one hand, they claim in a February 10, 2017 brief to have "always believed the description in the Settlement Agreement called for a security interest in the larger property, consisting of 477 acres owned by Visnic Reserve, LLC," and not the 20-acre parcel with the house. D. Br. (Doc. 136) at 4. And, on the other hand, the Visnics contend that they "expressly intended to give the required security on the 20-acre parcel in the Settlement Agreement, even if they erroneously provided security on the [457-acre] property afterwards[.]" D. Supp. Br. (Doc. 143) at 22.

Here, counsel for the Kuhns makes much of the Visnics' reference to "477 acres" in that February 10 brief. Specifically, the Kuhns contend that the Visnics' reference to 477 acres reflects the parties' mutual understanding that defendants were supposed to convey both the parcel identified in the Settlement Agreement (the 20 acres and house) plus the parcel of 457 acres. Not so; defense counsel's brief reflects only that counsel mistakenly referred to the number of acres in one of those parcels, but says nothing of the Visnics' intent to convey *both* the larger parcel *and* the smaller, 20-acre parcel with a house. This fact is confirmed by the brief's statement that the larger parcel of "477 acres" was owned by Visnic Reserve, LLC, as it is undisputed that Visnic Reserve, LLC owned the larger, 457-acre parcel, but *not* the 20-acre parcel with a house. Thus, the error in the brief sheds no light on the salient mistake of fact that the Kuhns must prove by clear and convincing evidence, namely, that the Visnics and the Kuhns

understood the Settlement Agreement to require deeds of trust on both the 457-acre parcel and the 20-acre parcel with the house. *See Collins*, 467 S.E.2d at 283 (holding that the relevant inquiry for a mutual mistake of fact is "whether each party held the *same* mistaken belief with respect to a material fact *at the time* the agreement was *executed*" (emphases added)).

Furthermore, the Kuhns' myopic view of page 4 of the Visnics' brief ignores the brief's previous page in which the Visnics note that "[d]efendants provided Plaintiffs with the Deed of Trust [on] 477 acres of Montana real property," that is, the larger parcel without the house. *Id.* at 3. To be sure, this mistaken reference to the second, larger parcel as comprising 477 acres is one that counsel for the Kuhns' shared. *Compare id.*, *with* D. Ex. 28 (November 30, 2016 Email) (identifying two parcels, one comprising "477 acres" and a second totaling "20 acres and [a] house"). Yet, this mistake is immaterial, as the Kuhns must show that they and the Visnics believed that the parcel number in the Settlement Agreement represented *both* the 457-acre parcel and the 20-acre parcel with a house. The mistaken reference to 477 acres simply confirms the parties' apparent consensus that there were multiple parcels—one parcel comprising over 450 acres, and another with a house totaling 20 acres—but says nothing of the Visnics' intent to provide deeds of trust on both properties.

The Kuhns' final argument is that the Visnics must have intended to convey both the encumbered 457-acre parcel and the unencumbered 20-acre parcel in Montana because the Settlement Agreement mentions "one or two" potential pre-existing liens that "may" be on the Visnics' Montana and Maryland properties. *See* Settlement Agreement ¶ 2. This contention is also unpersuasive. Indeed, the Kuhns concede that the terms in ¶ 2 regarding potential, pre-existing liens are vague. Thus, the Kuhns read too much into those terms. It is undisputed that the

Maryland property also has a pre-existing lien, and thus the equivocal language regarding "potential" liens may have referred solely to the Maryland property.

It is also worth noting that the Kuhns' counsel's correspondence with defense counsel further undermines the Kuhns' claims that they believed that they were entitled to both the 457-acre parcel and the 20-acre parcel with a house. Indeed, the Kuhns' counsel's November 30, 2016 email acknowledges that ¶ 2 of the Settlement Agreement did not include the 457 acres, and that the Visnics *erroneously* provided a deed of trust on the larger, 457-acre tract. Specifically, the Kuhns' counsel wrote that the Visnics secured "the *wrong* Deed of Trust" on "the 477 acres [sic] NOT included in the Settlement Agreement, … which carries a significant Mortgage." D. Ex. 28 at 2 (first emphasis added). Counsel for the Kuhns continued, noting, "We have now confirmed that the Parcel listed in the Settlement Agreement for the Montana Property is actually the 20 acres and the house, unencumbered." *Id.*[14] This email indicates that the Kuhns sought, and believed they were entitled to, the unencumbered property with the house (the 20-acre parcel), not the encumbered property (the 457-acre parcel). Finally, the Kuhns' claim that the Visnics understood the Settlement Agreement to require deeds of trust on (1) the 20-acre parcel with a house, (2) the 457-acre parcel, *and* (3) the Visnics' Maryland property, is further belied by the likelihood that all three properties would appear to provide more collateral than necessary to secure a $500,000 note.

In sum, the record confirms that the Kuhns have not shown by clear and convincing evidence that the parties made the same mistake of fact—the mistaken belief that the parcel number that the Kuhns' counsel inserted into the Settlement Agreement represented both the 20-

---

[14] It is worth recalling in this respect that it was the *Kuhns'* counsel, after researching Montana land records, who obtained and inserted into the Settlement Agreement the parcel number identifying only a 20-acre parcel.

acre parcel with a house and the 457-acre parcel. Thus, the Kuhns are not entitled to equitable reformation of the Settlement Agreement on such grounds.

*ii) Fraud*

Similarly, the Kuhns have failed to show clear and convincing evidence of a unilateral mistake accompanied by fraud. To obtain the equitable remedy of contract reformation based on a unilateral mistake, the Kuhns must show by clear and convincing evidence that their unilateral mistake—that the parcel number their counsel inserted into the Settlement Agreement reflected not just the 20 acres with a house, but also the 457 acres—was at the time of contracting "accompanied by misrepresentation and fraud perpetrated by the [Visnics]." *Ward*, 387 S.E.2d at 462. The Kuhns on this record have not shown clear and convincing evidence of fraud.

Virginia law recognizes three types of fraud: actual fraud, constructive fraud, and fraud by omission. *See generally Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826-27 (4th Cir. 1999) (surveying Virginia fraud law). The record discloses that the Kuhns have shown none of these. To show actual fraud, the Kuhns must show by clear and convincing evidence (1) that the Visnics made a false representation, (2) that the representation was on a material fact, (3) that the Visnics made the false representation intentionally and knowingly with an intent to mislead, (4) that the Kuhns relied on the misrepresentation, and (5) that the Kuhns suffered damages resulting from that reliance. *See Signet*, 193 F.3d at 826; *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994). To prove constructive fraud, the Kuhns must show by clear and convincing evidence (1) that the Visnics innocently or negligently made a false representation of a material fact, (2) that the Visnics made the false representation with the intent that a reasonable person would believe it and act on it, and (3) that the Kuhns suffered damage as a result of their reliance on the misrepresentation. *See Signet*, 193 F.3d at 827; *Henderson v. Henderson*, 495 S.E.2d 496, 499

(Va. 1998). Finally, showing fraud by omission requires the Kuhns to prove by clear and convincing evidence (1) that the Visnics deliberately concealed a material fact with intent to prevent the Kuhns from learning the truth, (2) that the Visnics knew that the Kuhns were acting upon the assumption that the fact does not exist, and (3) that the Visnics had a duty to disclose that fact. *See Signet*, 193 F.3d at 827; *Norris v. Mitchell*, 495 S.E.2d 809, 812-813 (Va. 1998); *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 597 (Va. 1984).

Importantly, Virginia law is clear that "[i]n all cases of fraud the plaintiff must prove that [the plaintiff] acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation (or on the assumption that the concealed fact does not exist)." *Signet*, 193 F.3d at 827. But where, as occurred here, a plaintiff makes a partial inquiry or investigation, that plaintiff cannot subsequently show fraud. *Id.* Of course, if the party "inducing the [plaintiff] to enter the contract throws the [plaintiff] off guard or diverts him from making the reasonable inquiries which usually would be made … Virginia law will forgive an incomplete investigation." *Id.* at 828. Otherwise, a plaintiff "cannot claim reliance" if, after making "a partial inquiry, with full opportunity of complete investigation," the plaintiff "elects to act upon the knowledge obtained from the partial inquiry[.]" *Id.* at 827 (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (citing *Harris v. Dunham*, 203 Va. 760, 127 S.E.2d 65, 71-72 (1962))). This sensible rule recognizes that a plaintiff who made a partial inquiry "did not actually rely upon the misrepresentation, but rather relied upon his own investigation into the matter, however incomplete." *Id.* Thus, for the Kuhns to show entitlement to contract reformation based on unilateral mistake accompanied by fraud, the Kuhns must show justifiable reliance despite their counsel's partial inquiries. Here, the Kuhns have fallen far short of making this showing by clear and convincing evidence.

To begin with, the Kuhns have not proven by clear and convincing evidence that the Visnics made a misrepresentation or actionable omission, as there is no evidence in the record that the Visnics concealed information with intent to prevent the Kuhns from learning the truth about the Parcel Number identified in the Settlement Agreement. *See Norris*, 495 S.E.2d at 812. To the contrary, counsel for the *Kuhns* inserted the parcel number into the Settlement Agreement after conducting a land-record search. And it is not fraud for the Visnics to agree to execute deeds of trust on the 20-acre plot identified in the Settlement Agreement—land that the Kuhns argue now is more valuable than the 457 acres.

Moreover, the Kuhns cannot show the requisite "justifiable reliance" to prove fraud. Had the Kuhns' counsel carefully completed the search they initiated, that search would have revealed that the parcel number in ¶ 2 of the Settlement Agreement identified only a 20-acre parcel with a house. And there is no indication that the Visnics diverted or prevented the Kuhns from making a reasonable inquiry. Rather, the record discloses that counsel for the Kuhns performed incomplete land record searches and chose to insert a parcel number into the Settlement Agreement to designate which property plaintiffs sought as security for the promissory note. Thus, reformation on this basis is inappropriate.[15]

---

[15] Although the parties have not cited the Restatement (Second) of Contracts, it is worth noting that the Restatement provides that the "mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude ... reformation." Restatement (Second) of Contracts § 157 cmt. a. Yet, the Restatement, unlike Virginia law, identifies only one ground for reformation—mutual mistake, but not fraud. *Compare id.* § 155 (noting that a party may seek reformation of a written contract when the writing "fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing"), *with Ward*, 387 S.E.2d at 462 (noting that in Virginia a party may seek reformation based on a unilateral mistake "accompanied by misrepresentation and fraud"). Virginia law, of course, controls here.

In summary, the Kuhns have not shown by clear and convincing evidence either a mutual mistake or a unilateral mistake accompanied by fraud. The Kuhns' request for reformation therefore fails.

### C. Enforcement of the October 21 Order

The Kuhns also seek an order mandating that the Visnics abide by the October 21 Order, which itself required compliance with the Settlement Agreement. Stated differently, the Kuhns seek specific performance of the Settlement Agreement provision requiring the Visnics to execute a deed of trust on the 20-acre parcel. Yet, because the Kuhns have accepted a quitclaim deed on 457 acres of real property never identified in the Settlement Agreement and are now selling that property, it would be inequitable to require specific performance with respect to the 20-acre parcel. As the Supreme Court of Virginia has stated, "specific performance of a contract [will not] be decreed … if, by doing so, hardship and injustice are forced upon one of the parties through a change in circumstances not contemplated by them when the contract was made." *See, e.g.*, *Clay v. Landreth*, 45 S.E.2d 875, 878-78 (Va. 1948). Notably, "[t]his equitable principle applies equally whe[n] the case involves … land." *Id.*; *see also Barnett v. Cloyd's Ex'rs*, 100 S.E. 674 (Va. 1919) ("[A] plaintiff who seeks the aid of a court of equity to enforce specific performance of a contract submits himself to the rule that he who asks equity must do equity.").[16]

Here, it would be inequitable to require the Visnics to execute a deed on the 20-acre parcel identified in the Settlement Agreement precisely because the Kuhns (1) accepted substitute performance by accepting a deed of trust on the 457-acre parcel of land, (2) received

---

[16] *Cf.* Restatement (Second) of Contracts § 367(b) ("Specific enforcement of a contract may be refused if … its enforcement will cause unreasonable or disproportionate hardship or loss to the defendant …."); *see also id.* § 367 cmt. a ("Even though the plaintiff's conduct has not been such as to cause a court to refuse him a judgment for damages or even such as to entitle the defendant to any affirmative remedy against him, it may be such as to disentitle him to the remedy of specific performance.").

from the Visnics a quitclaim deed to that 457-acre parcel, which may be worth a substantial portion of the promissory note, even accounting for any outstanding mortgage, (3) the Kuhns have acquired a deed of trust on Mr. Visnic's Maryland property, and (4) the Kuhns have filed a Confession of Judgment action in Virginia state court. Thus, if the Kuhns prevail in the pending state-court action, they may also become judgment creditors then entitled to impose a lien on the 20-acre parcel and house in Montana.

In short, the Kuhns have accepted substitute property that was not identified in the Settlement Agreement and to which the Kuhns did not have a right under the Settlement Agreement. And given that reformation is inappropriate, and specific performance inequitable, the Kuhns' motion to enforce must be denied.

### D. Rule 60(b)

The Kuhns' next argument is that the Order dismissing this action with prejudice should be vacated pursuant to Rule 60(b), Fed. R. Civ. P. Specifically, Rule 60(b) provides that

> the Court may relieve a party … from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; …
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; … or
>
> (6) any other reason that justifies relief.

Rule 60(b), Fed. R. Civ. P. Relief under Rule 60(b) from a final judgment or order is an extraordinary remedy. *See Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). Importantly, "before a party may seek relief under Rule 60(b), a party must first show 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Id.* (quoting *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)).

Here, the Kuhns reprise their arguments regarding mistake of fact—namely, their mistaken belief that the parcel number in ¶ 2 of the Settlement Agreement reflected more than the house and 20 acres in Montana—and the "fraud" allegedly committed by the Visnics. For the reasons already stated, those contentions are unavailing, and the Kuhns have not shown the "exceptional circumstances" required pursuant to Rule 60(b). *See id.*

The Kuhns further contend that they are entitled to Rule 60(b) relief because the Visnics defrauded not just plaintiffs, but also the Court. In this respect, the Kuhns seek to show that the Visnics engaged in a "deliberate scheme to … subvert the judicial process." *See Great Coastal Express, Inc. v. Int'l Bd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982). Specifically, the Kuhns point to their previous motion to enforce the settlement—which motion precipitated the October 21 Order—as evidence that the Visnics always intended to mislead the Court and obfuscate the fact that the Visnics were flouting the Settlement Agreement. But that is not evidence of fraud on the Court. In fact, the October 21 Order specifically set a hearing to ascertain whether the Visnics had complied with the Settlement Agreement and executed the appropriate deeds of trust. Yet, it was the Kuhns' counsel who in effect stated that this hearing was unnecessary by submitting a consent motion of dismissal the day before the compliance hearing. In other words, the Court, in dismissing this action, relied in substantial part on the Kuhns' counsel's implicit representation that the Visnics had complied with the Settlement Agreement. After all, when the Kuhns submitted the consent dismissal motion, the Kuhns knew or should have known that they had received a deed of trust on a parcel of property not specified in the Settlement Agreement. The Kuhns' failure to note or confirm that fact does not demonstrate fraud on the Court. Indeed, there does not appear to have been any fraud on the Kuhns, either, as the record discloses that counsel for the Kuhns received a copy of the deed of

trust before they submitted the joint motion to dismiss this matter with prejudice. The Kuhns therefore cannot show the "extraordinary" circumstances sufficient to vacate the final order in this matter.

Finally, there are no other "reason[s] that justify relief" under Rule 60(b)(6), Fed. R. Civ. P. Indeed, not only did counsel for the Kuhns indicate that a compliance hearing was unnecessary, but the Kuhns have already proceeded in state court on a Confession of Judgment action predicated on the Settlement Agreement. It would thus be nonsensical to grant the Kuhns' motion to rescind the dismissal order and proceed to trial on the Complaint's original claims while the Kuhns simultaneously proceed in state court to enforce a promissory note, which the Visnics provided in exchange for a release of liability on the very claims the Kuhns now seek to reopen. Moreover, the Kuhns are currently the title-holders to the 457-acre parcel in Montana never identified in the Settlement Agreement. And despite the Visnics' repeated offers to exchange the 457-acre parcel for the 20-acre parcel identified in the Settlement Agreement, the Kuhns refuse to part with that larger parcel. Such circumstances do not warrant relief pursuant to Rule 60(b).

Simply put, the Kuhns have not shown that they are entitled to the "extraordinary" relief contemplated by Rule 60(b), and therefore this motion must be denied.

### E. Sanctions

For essentially similar reasons to those already stated, *see supra* Parts II.B-D, sanctions are inappropriate here.

### III.

Although there is no clear and convincing evidence in this case of a mutual mistake by the parties or of a unilateral mistake coupled with fraud, there is more than a little record

evidence that both parties, and their counsel, could have been more careful in the drafting, reviewing, and implementing of ¶ 2 of the Settlement Agreement. Neither party initially recognized that although ¶ 2 required a deed of trust on only the 20-acre parcel with a house, the Visnics' local counsel in Montana executed and produced a deed of trust on a 457-acre parcel never specified in the Settlement Agreement. And the Kuhns' counsel accepted this deed of trust rather than returning it in exchange for a deed of trust on the parcel identified in the Settlement Agreement. So, as a result of their own actions, the parties find themselves in the following circumstances:

- the Kuhns have a promissory note obligating the Visnics to pay $500,000, which the Visnics signed in exchange for a release of liability for any and all claims, including the underlying breach-of-contract claims;

- the Kuhns' counsel inserted into the Settlement Agreement a parcel number identifying a Maryland property and a 20-acre parcel with a house in Montana, which the parties agreed would serve as security for the promissory note;

- the parties have a Settlement Agreement, pursuant to which the Visnics made a $10,000 initial payment to the Kuhns before defaulting on all further required payments;

- the Kuhns accepted a deed of trust on the Maryland property;

- the Kuhns accepted a deed of trust and quitclaim on a 457-acre parcel of Montana property never listed in the Settlement Agreement;

- the Kuhns are poised to sell the 457-acre parcel;

- the Visnics have offered to provide the Kuhns a deed of trust on the 20-acre parcel with a house in exchange for the 457-acre parcel, which would give effect to the Settlement Agreement's terms; and

- the Kuhns have rejected the Visnics' offer to swap the 20-acre parcel with a house for the 457-acre parcel.

That is the bed the parties have made, so now they must lie in it. Accordingly, the Kuhns' motion will be denied.

Finally, it must be observed that this has been a very hard-fought litigation and settlement process marked with more than a little vitriol.[17] The parties are free to continue their vitriolic battle, but not in this case. This case is over.

An appropriate Order will issue.

Alexandria, Virginia
May 22, 2017

/s/

T. S. Ellis, III
United States District Judge

---

[17] An example of this vitriol may be found in the parties' email traffic in which one client called the opposition "ass clowns" in a message to his own lawyer, opposing counsel, the opposing party, and an apparently unrelated third-party. P. Ex. 10. Indeed, a represented party repeatedly engaged in this process by communicating directly and inappropriately with opposing counsel. *See, e.g.*, P. Exs. 1, 10, 14, 35 & 40. And when counsel properly requested permission to respond, that request was ignored. *See* P. Ex. 40; D. Ex. 20; Va. R. Prof'l Conduct 4.2 & cmt. 3.